IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lawrence Dawson,<br><br>    Petitioner,<br><br>vs.<br><br>Dora Schriro, et al.,<br><br>    Respondents. | CIV 05-797 PHX-SMM (LOA)<br><br>**Report and Recommendation** |

    This matter arises on Petitioner's Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254.[1] (document # 1). Respondents filed an Answer (document # 30) asserting that the Petition should be dismissed as untimely. The Court ordered Petitioner to file a reply on or before October 15, 2005 showing cause why his Petition should not be dismissed as untimely. (document # 33) Thereafter, Petitioner filed a Reply in which he indicated that he had difficulty reviewing Respondents' Answer because of his poor eyesight and requested a copy of the Answer in a larger font and a copy of the exhibits that was darker. (documents # 37, # 40, # 41) The Court ordered Respondents to provide Petitioner with a modified copy of their Answer in a larger font and with a darker copy of the exhibits. The Court also permitted Petitioner until November 15, 2005 to file a revised Reply based upon his review of the modified Answer. On October 11, 2005, Respondents notified the Court

---

[1] In view of Petitioner's alleged visual impairment, this is in 14 point font.

that they had mailed Petitioner a copy of their Answer in 14-point font along with a darker copy of the exhibits to the Answer. Petitioner has not filed a revised Reply and the time for doing so has passed. Accordingly, this matter is fully briefed and ripe for review. The Court will now turn to Petitioner's § 2254 petition and will determine whether it is timely filed.

## **PROCEDURAL HISTORY**

Following a jury trial[2] in 1987, Petitioner was convicted in the Superior Court of Arizona of numerous counts of sexual molestation and child abuse. See, State v. Dawson, 164 Ariz. 278, 279, 792 P.2d 741, 742 (1990). On November 17, 1987, the trial court sentenced Petitioner to presumptive sentences on each count for a total of sixty years without the possibility of parole for thirty-five years. (Respondents' Exh. A)

**I. Direct Appeal**

Petitioner filed a direct appeal arguing that: (1) the trial court erred in admitting a witness statement accusing Petitioner of the crimes; (2) the prosecutor made improper closing arguments; and (3) the prosecutor misstated the law regarding the burden of proof. (Respondents' Exh. B) On April 6, 1989, the Court of Appeals affirmed Petitioner's convictions and sentences. (Respondents' Exh. B)

**II. Post-Conviction Proceedings**

    **A. First Post-Conviction Motion**

Several years later, on February 2, 1994, Petitioner filed an untimely pro se petition for post-conviction relief in the trial court. (Respondents' Exh. D) Petitioner claimed that he had received ineffective assistance of counsel. The trial court appointed counsel who advised the court that he would not supplement the petition which Petitioner had already filed. (Respondents' Exh. E, F) On June 7, 1995, the trial court summarily denied Petitioner's petition for post-conviction relief.

---

[2] The Honorable Edward L. Dawson presided.

Petitioner did not take any further action until March 1997 when he filed a motion for rehearing in the trial court. Because Petitioner claimed that he did not receive notice of the trial court's June 7, 1995 decision until approximately sixteen months later, the trial court accepted Petitioner's untimely motion for rehearing. On November 7, 1997, the trial court denied and dismissed Petitioner's motion for rehearing noting that it had given Petitioner "the benefit of reconsideration even though his Petition was untimely" and that it found no grounds for relief after "[h]aving reviewed all aspects of the case for error and possible grounds for relief. . . ." (Respondents' Exh. I)

Petitioner then filed a petition for review with the Arizona Court of Appeals. (Respondents' Exh. J at 2) Petitioner alleged that: (1) the trial court erred in admitting into evidence Petitioner's statement allegedly obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966); (2) trial counsel was ineffective; (3) the State suppressed a tape-recorded interview of a victim; (4) the State presented perjured testimony to the grand jury; (5) the State engaged in improprieties in conducting victim and witness interviews; (6) Petitioner is actually innocent; and (7) Petitioner's due process rights were violated. (Respondents' Exh. J)

The Court of Appeals found that Petitioner's petition for review failed to comply with the requirements of Ariz.R.Crim.P. 32.9(c) because the petition did not contain "concise statements of the trial court's ruling or rulings, the issues decided by the trial court that petitioner wishes to present for review, the facts material to a consideration of those issues, and the reasons why the petition should be granted." (Respondents' Exh. L at 2) On April 27, 1999, the Court of Appeals denied relief. (Respondents' Exh. M)

**B. Second Post-Conviction Motion**

On August 11, 2000, Petitioner filed a second notice of post-conviction relief. (Respondents' Exh. M) The trial court again appointed counsel. (Respondents' Exh. M) Counsel advised that court that, after review of the record, she found no viable issues to

raise. (Respondents' Exh. M) On November 1, 2000, the trial court dismissed Petitioner's second petition for post-conviction relief. (Respondents' Exh. M)

In 2001, Petitioner sought review of the denial of his second petition for post-conviction relief. (Respondents' Exh. O) However, because Petitioner failed to comply with the time limits for filing a petition for review, on September 10, 2001, the Arizona Court of Appeals dismissed the petition as untimely. (Respondents' Exh. P)

### C. Third Post-Conviction Motion

On June 17, 2002, Petitioner filed a third notice of post-conviction relief. (Respondents' Exh. R) On August 1, 2002, Petitioner filed an additional notice of post-conviction relief along with his petition for relief. (Respondents' Exh. S, T) Petitioner raised issues regarding the number of jurors at his trial, a conflict of interest on the part of defense counsel, and ineffective assistance of counsel. (Respondents' Exh. T) On November 4, 2002, the trial court permitted Petitioner an opportunity to explain whether his claims were precluded. (Respondents' Exh. V) The trial court "cautioned [Petitioner] that simply continuing to state his disagreement with rulings previously made will not suffice." Id.

On December 30, 2002 and January 10, 2003, Petitioner filed additional arguments in support of his petition for post-conviction relief. (Respondents' Exh. W, X) The trial court appointed new counsel to review Petitioner's arguments. Counsel indicated that she did not find any non-precluded claims to raise on Petitioner's behalf. (Respondents' Exh. Z) On June 3, 2003, the trial court dismissed both Petitioner's June 17, 2002 and August 1, 2002 petitions for post-conviction relief. (Respondents' Exh. BB)

### D. Fourth Post-Conviction Relief Motion

On June 25, 2003, Petitioner filed a fourth notice and petition for post-conviction relief. (Respondents' Exh. CC) On August 1, 2003, the trial court dismissed the petition. (Respondents' Exh. EE)

1   Thereafter, Petitioner attempted to file a petition for review with the appellate court but failed to comply with a court order, resulting in the dismissal of his case on March 22, 2004. (Respondents' Exh. FF)

### III. Federal Habeas Corpus Proceedings

In the meantime, Petitioner filed several petitions for writ of habeas corpus with this Court. On March 15, 2005, he filed the pending Petition, his sixth petition filed with this Court. (document # 1) In an April 29, 2005 Order this Court discussed Petitioner's prior filings noting that:

> [Petitioner's] first action was dismissed without prejudice for failure to comply with Rule 2(c) of the Rules Governing § 2254 cases. Dawson v. Thomas, CV 90-632 TUC-RMB, *aff'd* Dawson v. Thomas, No. 90-16739 (9th Cir. 1990). The second was dismissed without prejudice for failure to exhaust state remedies. Dawson v. Thomas, CV 90-788 TUC-WBD, aff'd, Dawson v. Thomas, 91-15629 (9th Cir. 1991). The third petition was ultimately dismissed without prejudice for failure to exhaust state remedies. Dawson v. Thomas, CV 91-503 TUC-RMB. The fourth petition, which claimed that the state court had failed to rule on a post-conviction petition, was dismissed as moot when it was discovered that the state court had ruled before the habeas action was filed. Dawson v. Rollins, CV 95-2001 PHX-CAM (BGS), appeal denied, CV 96-16888 (9th Cir. 1996). The fifth petition was dismissed without prejudice to refiling the claims in a civil rights action. Dawson v. Stewart, No. CV 96-1230 PHX-RGS (BGS).

(April 29, 2005 Order, (document # 6)

Although Petitioner's pending Petition is his sixth, "[b]ecause none of the prior dismissals were on the merits, the present petition does not fall under the 'second or successive' doctrine." (Id.) Respondents argue that the Petition should be dismissed as untimely. Petitioner disagrees.

### **STATUTE OF LIMITATIONS**

### I. Limitations Period

On April 24, 1996, the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") went into effect drastically altering the time limit imposed on state prisoners filing habeas corpus petitions in federal court. Before the AEDPA, virtually no time limit restrained state prisoners' filing of federal habeas petitions. Calderon v. United

States Dist. Court, 128 F.3d 1283, 1286 (9th Cir. 1998) (Beeler), *overruled, in part, on other grounds*, (CITE) 1998 WL 848032 (9th Cir. 1998). The AEDPA, however, established a one-year period in which to file a petition for writ of habeas corpus in federal court. 28 U.S.C. § 2244(d)(1). Because Petitioner filed his Petition after the effective date of the AEDPA, it governs this action.

> Title 28 U.S.C. § 2244 provides, in pertinent part, that:
> (D)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.
>
> The limitation period shall run from the latest of-
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.

28 U.S.C. § 2244(d)(1)(A). "Final", as used in § 2244, includes the 90-day period in which a defendant may file a petition for a writ of certiorari from the United States Supreme Court.[3] Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir. 1999).

Here, Petitioner's direct appeal was dismissed on April 6, 1989. Petitioner did not seek further review. Accordingly, his conviction was final in 1989, well before the enactment of the AEDPA.

State prisoners, like Petitioner, whose convictions became final before the 1996 enactment of the AEDPA, had a one-year grace period in which to file a habeas corpus petition in federal court. In Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001), the Ninth Circuit held that "AEDPA's one-year grace period for challenging convictions finalized before AEDPA's enactment date is governed by Rule 6(a)[4] and ended on April 24, 1997 in the absence of statutory tolling." Id. Thus, in this case, the AEDPA grace period expired on April 24, 1997. Patterson, 251 F.3d at 1246.

---

[3] "The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate." Sup. Ct. R. 13.3.

[4] Federal Rule of Civil Procedure 6(a) provides: "In computing any period of time prescribed or allowed by these rules, by the local rules of any district court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included." Id.

- 6 -

Petitioner did not file his pending petition until March 15, 2005, therefore it is untimely absent tolling.

## II. Tolling the Limitations Period

### A. Pendency of Petition for Review Pursuant to Ariz. R. Crim. P. 32

AEDPA's one-year grace period is tolled during the time that a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); Stevens v. Hickman, 2000 WL 1092242, * 1(N.D. Cal. 2000)(quoting Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999)(stating that an application for collateral review is pending in State court for "all the time during which a state prisoner is attempting, through proper use of state court procedures, to exhaust state remedies with regard to particular post-conviction proceedings.")

### 1. Petitions for Post-Conviction Relief

As previously discussed, the AEDPA limitations period commenced on April 24, 1996. Prior to that date, Petitioner had filed his first petition for post-conviction relief which the trial court denied on June 7, 1995. Nearly sixteen months later, in March of 1997, the trial court granted Petitioner leave to file an untimely motion for rehearing. Apparently, the trial court credited Petitioner's claim that he did not receive notice of the trial court's June 7, 1995 ruling until March of 1997. Although the trial court granted Petitioner leave to file his untimely motion for rehearing, it denied relief. Petitioner then sought review in the appellate court which was denied on April 27, 1999. (Respondents' Exh. L. H)

For purposes of analyzing the statute of limitations issue, the Court assumes without deciding that, Petitioner diligently pursued his first post-conviction proceeding but, through no fault of his own, was unaware of the trial court's June 7, 1995 ruling until March of 1997 when he filed a motion for rehearing. Thus, when the AEDPA limitations period commenced on April 24, 1996, Petitioner was pursuing his first post-conviction motion in state court. The AEDPA limitations period is tolled for "all of the

time during which a state prisoner is attempting, through the proper use of state court procedures, to exhaust state court remedies with regard to a particular post-conviction application." Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999). A state court application is "pending" and the limitations period is tolled when an application for post-conviction relief is actually being considered by the state trial or appellate court and also during the interval or "gap" between the trial court's initial disposition of the timely filing of a petition for review at the next level. Currie v. Matesanz, 281 F.3d 261, 266 and 268 n. 8 (1st Cir. 2002). See, Carey v. Saffold, 536 U.S. 214, 226 (2002)(interval between California trial court's disposition of post-conviction relief and timely notice of appeal are included in tolling under the AEDPA, case is considered pending until the state supreme court's final resolution of the case.) Thus, in this case the AEDPA limitations period was tolled from April 24, 1996 until April 27, 1999 when the appellate court denied review of Petitioner's first petition for post-conviction relief. The statute of limitations commenced on April 28, 1999 and Petitioner's federal petition for writ of habeas corpus was due one year later, on or about April 28, 2000. Petitioner did not file his pending petition until March 15, 2005, therefore it is untimely, unless there is another basis for tolling the limitations period.

Petitioner had no cases pending in state court from April 27, 1999 — the date on which the Court of Appeals issued its decision denying Petitioner relief — until August 11, 2000 when he filed his second petition for post-conviction relief. (Respondents' Exh. JJ). The limitations period expired before Petitioner filed his second petition for post-conviction relief. Likewise, the limitations period was expired before Petitioner filed his third and fourth petitions for post-conviction relief.

Petitioner's second, third, and fourth petitions for state post-conviction relief were filed after the limitations period expired and could not toll the already expired grace period. Section 2244(d)(2) cannot "'revive the limitation period (i.e. restart the clock at zero); it can only serve to pause the clock that has not yet fully run. Once the limitation period is expired collateral petitions can no longer serve to avoid a statute of limitation.'"

Johnson v. Galaza, 2001 W.L. 125312, * 1 (N.D.Ca. 2001)(quoting Rashia v. Kuhlman, 991 F.Supp. 254, 259 (S.D.N.Y. 1998)). See also, Jackson v. Dormire, 180 F.3d 919, 920 (8th Cir. 1999)(holding that § 2244(d)(2) did not apply where petitioner whose conviction became final prior to the effective date of AEDPA, filed post-conviction motion after the limitations period expired.) In view of the foregoing, Petitioner's habeas corpus petition is untimely unless he establishes a basis for equitable tolling.

### B. Equitable Tolling

The Ninth Circuit recognizes that the § 2244(d) limitations period may be equitably tolled because it is a statute of limitations, not a jurisdictional bar. See, Calderon v. United States, 128 F.3d 1283, 1288 (9th Cir. 1997). Tolling is appropriate when "extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." Calderon, 128 F.3d at 1288 (citation omitted); see also, Miranda v. Castro, 292 F.3d 1063, 1067 (9th Cir. 2002)(stating that "the threshold necessary to trigger equitable tolling [under the AEDPA] is very high lest the exceptions swallow the rule.") See also, Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003). "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999). The prisoner must show that the "extraordinary circumstances were the but-for proximate cause of his untimeliness." Allen v. Lewis, 255 F.3d 798, 799 (9th Cir. 2001). The extraordinary circumstances requirement is a "high hurdle", see Calderon, 128 F.3d at 1288, and policy considerations counsel against equitable tolling. Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980).

In his Reply and Response to Court Order (documents # 40, # 41), Petitioner does not specifically set forth any reasons for his untimely filing. Rather, he generally states that he is "not learned in the law," that he used to be able to read but "now [his] eyes have gone bad with cataracts and dyslexia," and that the print in the law books is not suitable for the visually impaired.

As a general matter, Petitioner's status as a prison inmate does not constitute an extraordinary circumstance beyond his control warranting the tolling of the one-year limitations period. See, <u>Marsh v. Soares</u>, 223 F.3d 1217, 1220 (10th Cir. 2000). Likewise, Petitioner's lack of familiarity with the law and lack of legal assistance do not toll the limitations period. See, <u>Hughes v. Idaho State Board or Corrections</u>, 800 F.2d 905, 909 (9th Cir. 1986)(finding that a pro se prisoner's illiteracy was not sufficient to satisfy the standard of an objective, external factor amounting to "cause" for purposes of avoiding the procedural bar on his habeas claim); see also, <u>Lewis v. Casey</u>, 518 U.S. 343, 351 (1996)(holding that there is no "freestanding right to a law library or legal assistance.")

Additionally, Petitioner's allegation that he has cataracts and dyslexia does not constitute "extraordinary circumstances" entitling him to equitable tolling of the AEDPA's statute of limitations. See, <u>Pham v. Garcia</u>, 2004 WL 3263485, * 5(S.D.Cal, Sept. 16, 2004)(concluding that petitioner's alleged "handicap in understanding, speaking, writing and reading English" was an insufficient basis for equitable tolling.)(citing <u>Cobas v. Burgess</u>, 306 F.3d 441, 444 (6th Cir. 2002)("where a petitioner's alleged lack of proficiency in English has not prevented petitioner from accessing the courts, that lack of proficiency is insufficient to justify equitable tolling of the statute of limitations.")). Petitioner states that his eyes have "*now* gone bad with cataracts and dyslexia. Petitioner's use of the word "now" implies that at some previous point in time, his eyesight was not impaired and he did not suffer from dyslexia. Although Petitioner does not provide a time frame regarding the deterioration of his eyesight or his development of dyslexia, the record reflects that Petitioner has been able to pursue his claims both in state and federal court. Petitioner filed numerous state petitions for post-conviction relief and has now filed six petitions for writ of habeas corpus relief in this Court. In fact, Petitioner continues to file voluminous pleadings with this Court all the while complaining about his visual impairment. Additionally, the Arizona Department of Corrections has procedures in place for providing assistance to the visually impaired.

1  See Ariz. Dep't Corr., Dep't Order Manual § 902.08–1.1 ("Accommodations shall be
2  made, as needed, to ensure access to the courts for inmates with special needs, to include
3  inmates who are . . . disabled); § 908.03–1.1 ("Wardens, Deputy Wardens and
4  Administrators shall provide interpreters for inmates in need of such services, which may
5  include interpreters for . . . the blind").

6  Based on this record, Petitioner cannot establish that his cataracts and dyslexia
7  prevented him from filing his petition on time. He is not entitled to equitable tolling
8  because he has not satisfied his burden of establishing that his visual impairment or
9  dyslexia was the "but-for and proximate cause of his untimeliness." Allen, 255 F.3d at
10 799. See, Gaston v. Palmer, 417 F.3d 1030, 1034-35 (9th Cir. 2005)(concluding that
11 petitioner's mental disabilities and multiple sclerosis were not extraordinary
12 circumstances warranting equitable tolling of AEDPA limitations period where petitioner
13 had been able to file habeas petitions before and after limitations period had expired.)

14 Because Petitioner filed his § 2254 petition after the expiration of the
15 limitations period and has not established a basis for tolling, his petition should be
16 denied as untimely.

17 Accordingly,

18 IT IS HEREBY RECOMMENDED that Petitioner's Petition for Writ of
19 Habeas Corpus by Person in State Custody pursuant to 28 U.S.C. § 2254 (document #1)
20 be **DENIED**.

21 This recommendation is not an order that is immediately appealable to the
22 Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal
23 Rules of Appellate Procedure, should not be filed until entry of the District Court's
24 judgment. The parties shall have ten days from the date of service of a copy of this
25 recommendation within which to file specific written objections with the Court. *See,* 28
26 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(e), Federal Rules of Civil Procedure. Thereafter,
27 the parties have ten days within which to file a response to the objections. Failure timely
28 to file objections to the Magistrate Judge's Report and Recommendation may result in

1 the acceptance of the Report and Recommendation by the District Court without further
2 review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure
3 timely to file objections to any factual determinations of the Magistrate Judge will be
4 considered a waiver of a party's right to appellate review of the findings of fact in an
5 order or judgment entered pursuant to the Magistrate Judge's recommendation. *See*, Rule
6 72, Federal Rules of Civil Procedure.

DATED this 28th day of November, 2005.

_____
Lawrence O. Anderson
United States Magistrate Judge